## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| ELIZA WILLE *et al.*, | * |
| Plaintiffs, | * |
| | * |
| v. | * |
| | * |
| GINA RAIMONDO, | * |
| *in her official capacity as Secretary of the* | * |
| *U.S. Department of Commerce, et al.*, | * |
| | * |
| Defendants. | * |

Civil No. 22-0689-BAH

*   *   *   *   *   *   *   *   *   *   *   *   *   *   *

### <u>MEMORANDUM OPINION</u>

Spinner dolphins are small, acrobatic dolphins that are known for their distinctive twisting leaps above the water. *Spinner Dolphin*, NOAA Fisheries: Species Directory, https://www.fisheries.noaa.gov/species/spinner-dolphin (Apr. 15, 2024). These agile animals are commonly found off the coast of Hawai'i, where a local industry developed around leading tours to swim with the spinner dolphins, and other local businesses incorporated the prolific presence of the dolphins in other ways. *Id.*; ECF 1, at 2. This lawsuit challenges a regulation (the "Approach Rule") that imposes limits on the ways humans can interact with spinner dolphins. ECF 1, at 2–3. Plaintiffs Eliza Wille, Shelley Carey, and Lisa Denning (collectively, "Plaintiffs") filed this lawsuit against Defendants Gina Raimondo, in her official capacity as the United States Secretary of Commerce; the National Marine Fisheries Service ("NMFS"); Richard Spinrad ("Dr. Spinrad"), in his official capacity as Administrator of the National Oceanic and Atmospheric Administration ("NOAA"); and Janet Coit ("Coit"), in her official capacity as Assistant Administrator for Fisheries (collectively, "Defendants"). ECF 1, at 1–3. Plaintiffs allege that the Approach Rule

was promulgated in violation of the Appointments Clause of the Constitution and ask that the Court declare the rule to be unconstitutional and enjoin Defendants from enacting any regulations by the same procedure in the future. *Id.* at 22–23. Pending before the Court is Defendants' motion for summary judgment, ECF 30. Plaintiffs opposed the motion, ECF 33, and Defendants filed a reply in support of the motion, ECF 34. All filings include memoranda of law and exhibits.[1] The Court has reviewed all relevant filings and finds that no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). Accordingly, for the reasons stated below, Defendants' motion for summary judgment is **GRANTED**.

## I.   BACKGROUND

The apparently exciting lives of spinner dolphins underlie this case, but the actual facts of legal significance pertain almost exclusively to the perhaps less exciting administrative process of adopting the Approach Rule. The rule was passed under the Marine Mammals Protection Act, 16 U.S.C. § 1361 *et seq.* (the "MMPA"). ECF 28, at 115. The MMPA authorizes the Secretaries of Commerce and the Interior to enact regulations to protect marine mammals from "take," which means "to harass, hunt, capture, or kill, or attempt to harass, hunt, capture, or kill any marine mammal." *See* 16 U.S.C. § 1362(13) (defining "take"); § 1371(1)–(5) (authorizing the Secretary to issue regulations enforcing a "moratorium on the taking and importation of marine mammals and marine mammal products"); § 1382 (authorizing the Secretary to "prescribe such regulations as are necessary and appropriate" to carry out the provisions of the MMPA); § 1382(12) (defining "Secretary" to include the Secretaries of Commerce and the Interior at various points in the statute).

---

[1] The Court references all filings by their respective ECF numbers and page numbers by the ECF-generated page numbers at the top of the page. In their filings related to the motion for summary judgement, both parties incorporated their filings related to Defendants' earlier motion to dismiss, ECFs 12, 15, and 16. *See* ECF 30-1, at 2–15 (citing and incorporating ECFs 12, 16); ECF 33, at 15–22 (citing and incorporating ECF 15).

Under the authority of the MMPA, in September 2021, NMFS and its parent agency NOAA, itself a subagency of the Department of Commerce, issued the Approach Rule, the full title of which is the "Swim With and Approach Regulation for Hawaiian Spinner Dolphins Under the Marine Mammal Protection Act." ECF 1, at 14; ECF 28, at 115 (administrative record). Before issuing the Approach Rule, NMFS reviewed scientific literature, conducted a dedicated scientific research project, considered comments from community meetings, and solicited comments to an Advance Notice of Proposed Rulemaking, ultimately determining that "[d]isturbances to dolphins' daily behavioral patterns" resulting from human interaction "may result in 'take.'" ECF 28, at 115, 117. NMFS implemented the Approach Rule to "prevent take of Hawaiian spinner dolphins from occurring in marine areas where viewing pressures are most prevalent." ECF 28, at 115, 117. The Approach Rule:

> prohibits people from approaching or remaining within 50 yards (45.7 m) of a spinner dolphin; swimming or attempting to swim within 50 yards (45.7 m) of a spinner dolphin; causing a vessel, person, or object to approach or remain within 50 yards (45.7 m) of a spinner dolphin; and intercepting, or placing a vessel, person, or other object in the path of a spinner dolphin so that the dolphin approaches within 50 yards (45.7 m) of the vessel, person, or object.

ECF 28, at 134.

As with nearly all federal administrative regulations, the Cabinet Secretary to whom the power to enact regulations was delegated by Congress did not herself issue the Approach Rule. Instead, the notice of final rulemaking published in the Federal Register bore the signature of Samuel D. Rauch III ("Rauch"), the Deputy Assistant Administrator for Regulatory Programs ("DAARP") of NMFS. ECF 28, at 138. Through a series of delegations, the Secretary's power to sign notices of final rules in the Federal Register had been delegated to Rauch as the DAARP. The Secretary herself delegated the power bequeathed to her by Congress to implement regulations enforcing the MMPA to the Under Secretary of Commerce for Oceans and Atmosphere, who is

3

also the NOAA Administrator.   ECF 28, at 92–95 (showing Department Organizational Order issued by the Secretary of Commerce delegating certain powers, including "[t]he functions prescribed by the Marine Mammal Protection Act of 1972" to the "Under Secretary of Commerce for Oceans and Atmosphere and Administrator of the National Oceanic and Atmospheric Administration (NOAA)").   As part of that delegation, the Secretary stated that the NOAA Administrator could further delegate that authority.   *Id.* at 100 (providing that the NOAA Administrator "may delegate such authority to any employee of NOAA").   And so the Administrator did.   The Administrator delegated the power to sign regulations in the Federal Register and Code of Federal Code Regulations to the Assistant Administrator for Fisheries, and, in turn, the Assistant Administrator for Fisheries delegated that power to the DAARP.   *Id.* at 105 (NOAA organizational handbook showing that, pursuant to the authority to redelegate authorities delegated to the Under Secretary/Administrator, the Administrator delegated the administrative duties relating to the "[s]ignature of material for publication in the Federal Register and the Code of Federal Regulations" to the Assistant Administrator for Fisheries); *id.* at 108 (NOAA organizational handbook showing that the Assistant Administrator for Fisheries delegated the authority of "[s]ignature of material for publication in the Federal Register and the Code of Federal Regulations" to the DAARP).

Each Plaintiff in this case, before the issuance of the Approach Rule, in some way relied on access to spinner dolphins in the waters of Hawai'i to earn their livelihood.   ECF 1, at 4–7. Wille is a psychotherapist who routinely incorporated "dolphin encounters" as a form of "experiential therapy" for her patients.   *Id.* at 4–5.   Carey is a boat captain who operated "dolphin swims" until the passage of the Approach Rule.   *Id.* at 6.   Denning is a "marine mammal naturalist" who worked as a "dolphin guide" leading dolphin interaction experiences and also supplemented

4

her income with ocean photography and videography which often included spinner dolphins. *Id.* Denning also runs a non-profit organization which utilized "dolphin-centered experiential psychotherapy." *Id.* at 6–7. Each Plaintiff's income has decreased substantially since the passage of the Approach Rule. *Id.* at 4–7.

In July 2022, after the filing of this lawsuit, Dr. Spinrad, who serves as the NOAA Administrator and the Under Secretary of Commerce for Oceans and Atmosphere, ratified the Approach Rule. ECF 28, at 141–43. In so doing, Dr. Spinrad "independently evaluated the Approach Rule and the basis for adopting it" and based his ratification on his "careful review of the Approach Rule, [his] knowledge of its provisions, and [his] independent judgment that the Approach Rule was and remains necessary to protect Hawaiian spinner dolphins, a protected species under the MMPA, from illegal 'take' by people wishing to closely swim with or approach the species." *Id.* at 142.

According to Plaintiffs, the DAARP "holds vast rulemaking power" and should be appointed pursuant to the Appointments Clause. ECF 1, at 3. Because Rauch is a "career civil servant" and was not appointed, Plaintiffs argue, he "holds his post unconstitutionally and lacked the power to adopt the [Approach rule]." *Id.* As a result, Plaintiffs claim that both the adoption of the Approach Rule and the delegation of authority to the DAARP were unconstitutional. *Id.* at 17–22. Defendants now argue that summary judgment should be granted in their favor because Spinrad's ratification resolved any alleged procedural defects as a matter of law. ECF 30; ECF 30-1, at 1. Plaintiffs counter that the ratification is invalid, or, in the alternative, that even if the ratification was effective, it does not resolve the claims on the merits. ECF 33, at 3–22.

## II.   **LEGAL STANDARDS**

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any *material* fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) (emphasis added). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Accordingly, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . . ." *Anderson*, 477 U.S. at 247–48 (emphasis in original). The Court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam); *Scott v. Harris*, 550 U.S. 372, 378 (2007). This includes "questions of credibility and of the weigh to be accorded to particular evidence." *Masson v. New Yorker Mag.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). "[I]n the face of conflicting evidence, such as competing affidavits, summary judgment ordinarily is not appropriate, because it is the function of the fact-finder to resolve factual disputes, including matters of witness credibility." *Angelini v. Balt. Police Dep't*, 464 F. Supp. 3d 756, 776 (D. Md. 2020).

At the same time, the Court must "prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 2003)). "[U]nsupported speculation is not sufficient to defeat a summary judgment motion." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *see also CTB, Inc. v. Hog Slat, Inc.*, 954 F.3d 647, 658–59 (4th Cir. 2020); *Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("[The nonmoving party's] self-serving opinion . . . cannot, absent objective corroboration, defeat

summary judgment."); *Harris v. Home Sales Co.*, 499 F. App'x 285, 294 (4th Cir. 2012) ("Although we do not make credibility determinations at the summary judgment phase, we should also not find a genuine dispute of material fact based solely on [the plaintiff's] self-serving testimony."). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat*, 346 F.3d at 522 (quoting the pre-2007 version of Fed. R. Civ. P. 56(e)).

## III.   ANALYSIS

Plaintiffs bring this case under the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.* ECF 1, at 17–22. "[T]he Administrative Procedure Act does not provide judicial review for everything done by an administrative agency[.]" *Invention Submission Corp. v. Rogan*, 357 F.3d 452, 459 (4th Cir. 2004) (first alteration in *Invention Submission Corp.*) (quoting *Hearst Radio v. F.C.C.*, 167 F.2d 225, 227 (D.C. Cir. 1948)). Instead, the APA grants federal courts jurisdiction to review specifically enumerated agency actions. "Final agency action," such as the issuance of a final rule, is reviewable by the courts. 5 U.S.C. § 704. Additionally, "[a] preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.* As such, the issuance of the Approach Rule is reviewable by this Court, and the delegation of authority which enabled the initial passage of the Approach Rule is reviewable to the extent that it is a "preliminary, procedural, or intermediate agency action" which underlies the final rule.

The primary question at issue in this motion is whether the ratification of the Approach Rule issued by Dr. Spinrad, the NOAA Administrator, validly cures any Appointments Clause defects that may have been present in the issuance of the initial Approach Rule. *See* ECF 30-1, at 1. Plaintiffs challenge this argument on several bases. *See* ECF 33, at 3–22. The Court will begin

7

by providing some background information on the Appointments Clause and the impacts of ratification on Appointments Clause challenges before moving on to the question of whether the ratification in this case resolves Plaintiffs' claims on the merits.

**A.     The Appointments Clause governs the appointment of officers of the United States.**

If Defendants succeed in their argument, the actual question of whether the adoption of the Approach Rule violated the Appointments Clause need not be addressed, as the ratification will have cured any such potential defects.  Still, some background on the Appointments Clause itself will be useful in understanding this analysis.  The Appointments Clause provides that the President "shall nominate, and by and with the Advice and Consent of the Senate, shall appoint . . . Officers of the United States."  U.S. Const. art. II, § 2, cl. 2.  At Congress's discretion, it "may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments."  *Id.*

Under the structure set up by the Appointments Clause, there are three different types of non-elected individuals who work for the United States government executive branch: principal officers, inferior officers, and employees.  *United States v. Arthrex, Inc.*, 594 U.S. 1, 13 (2021) (distinguishing between officers, inferior officers, and employees); *Buckley v. Valeo*, 424 U.S. 1, 126 n.162 (1976) (per curiam) ("Employees are lesser functionaries subordinate to officers of the United States.").  While employees can simply be hired by an executive agency through a normal hiring process, the appointment of principal officers and inferior officers must comply with more stringent constitutional standards.  *See Lucia v. S.E.C.*, 585 U.S. 237, 245 (2018).  Officers, both principal and inferior, exercise "significant authority" on behalf of the United States.  *Id.* at 245–46 (citation omitted).  Principal officers, including the members of the Cabinet such as the Secretary of Commerce, have no supervisor other than the President and must be appointed by the

President and confirmed by the Senate. *Arthrex, Inc.*, 594 U.S. at 12–13 (citing *Edmond v. United States*, 520 U.S. 651, 662 (1997)). Inferior officers, who are officers with a supervisor other than the President, can be appointed by the President without confirmation by the Senate. *Id.* (citing *Edmond*, 520 U.S. at 663).

Here, because Mr. Rauch was delegated the authority to sign rules published in the Federal Register, Plaintiffs assert that he held "significant authority" that could "be exercised only by an officer." ECF 1, at 12. Thus, because Mr. Rauch must have been an officer in order to sign the Approach Rule, Plaintiffs argue that he must have been appointed by the President in order to properly exercise that authority. ECF 1, at 17. It is alleged that Mr. Rauch was hired rather than properly appointed under the Appointments Clause, and as such, he did not have the proper authority to implement the Approach Rule, and the Rule was issued unconstitutionally. *Id.*

Defendants claim that, even if Plaintiffs are correct in their Appointments Clause challenge (which Defendants do not concede), any deficiencies in the issuing of the Approach Rule were cured by the Secretary's subsequent ratification, thus defeating Plaintiffs' claims as a matter of law. ECF 30-1, at 1. This Court finds the ratification of the Approach Rule dispositive, and, as such, will not reach the question of the constitutionality of the Approach Rule's initial promulgation under the Appointments Clause.

### B. A valid ratification can cure the procedural defects of a regulation issued in violation of the Appointments Clause.

Defendants assert that "courts have consistently accepted ratification by an authorized officer as a way to 'cure[] any potential Appointments Clause defect.'" ECF 30-1, at 8 (quoting *Moose Jooce v. Food & Drug Admin.*, 981 F.3d 26, 30 (D.C. Cir. 2020)). Plaintiffs argue that this is not necessarily the case. *See* ECF 33, at 15–22 (arguing that, *inter alia*, principles of common law prevent ratification from curing the alleged defects in this case). Plaintiffs make several

9

arguments contesting the ability of a valid ratification to cure procedural defects of an administrative rule, as explained below, and the Court will address each in turn.

The concept of ratification stems from traditional agency law and "occurs when a principal sanctions the prior actions of its purported agent." *Doolin Sec. Sav. Bank, F.S.B. v. Off. of Thrift Supervision*, 139 F.3d 203, 212 (D.C. Cir. 1998) (citing Restatement (Second) of Agency § 82 (1958)). This Court is persuaded by the holdings of circuits around the country, particularly the D.C. Circuit, that a subsequent valid ratification cures Appointments Clause defects in the issuance of an administrative rule and resolves procedural disputes on the merits. The D.C. Circuit, the Ninth Circuit, the Second Circuit, the Third Circuit, and the Federal Circuit have all held as much. *See Wilkes-Barre Hosp. Co., LLC v. Nat'l Lab. Rels. Bd.*, 857 F.3d 364, 371 (D.C. Cir. 2017) ("Our precedents establish that ratification can remedy a defect arising from the decision of 'an improperly appointed official . . . when . . . . a properly appointed official has the power to conduct an independent evaluation of the merits and does so.'" (quoting *Intercollegiate Broad. Sys., Inc. v. Copyright Royalty Bd.*, 796 F.3d 111, 117–21, 124 (D.C. Cir. 2015))); *Consumer Fin. Prot. Bureau v. Seila L. LLC*, 997 F.3d 837, 847 (9th Cir. 2021) ("[R]atification is available to cure both Appointments Clause defects and structural, separation-of-powers defects."); *Nat'l Lab. Rels. Bd. v. Newark Elec. Corp.*, 14 F.4th 152, 162 (2d Cir. 2021) ("We therefore decide that agency actions can be ratified . . . ."); *Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592, 604–05 (3d Cir. 2016) (finding that subsequent ratification cured procedural error); *McIntosh v. Dep't of Def.*, 53 F.4th 630, 641–42 (Fed. Cir. 2022) (finding that subsequent ratification cured Appointments Clause challenge). Though Plaintiffs argue strenuously that these holdings should be disregarded, they point to no courts that have considered this question and held otherwise. *See* ECF 33, at 15–

19 (arguing that common law principles should prevent ratification but failing to identify any case law which holds that an Appointments Clause defect cannot be cured by a valid ratification).

The strength of the precedent holding that a valid ratification can cure procedural defects in an Appointments Clause challenge is uniquely persuasive because "the D.C. Circuit [] is afforded particular weight in the area of administrative law." *Ohio Valley Env't Coal. v. U.S. Army Corps of Eng'rs*, 674 F. Supp. 2d 783, 802 (S.D.W. Va. 2009); *see also Otsuka Pharm. Co. v. Burwell*, Civ. No. GJH-15-852, 2015 WL 3442013, at *7 (D. Md. May 27, 2015) (same); *Jarita Mesa Livestock Grazing Ass'n v. U.S. Forest Serv.*, 140 F. Supp. 3d 1123, 1179 n.7 (D.N.M. 2015) ("The D.C. Circuit is not a formally subject-matter specialized Court of Appeals, but practically, it is close. . . . The D.C. Circuit's influence in administrative law is head and shoulders above that of the other Courts of Appeals, probably combined, and it does more to shape administrative law nationally than the Supreme Court.").

The D.C. Court of Appeals considered an appeal of a case with analogous facts to those at issue here in *Moose Jooce v. Food & Drug Administration* and found unequivocally that a valid ratification of a previously issued administrative rule cures any Appointments Clause defects and resolves any such challenge on the merits. 981 F.3d at 28. There, the D.C. Circuit considered an Appointments Clause challenge to an FDA rule that defined e-cigarettes as tobacco products— thereby subjecting them to additional regulations—that was promulgated by the FDA Associate Commissioner for Policy, who was "not appointed as either an inferior or principal officer." *Id.* at 27–28. After the lawsuit was filed, the FDA Commissioner issued a ratification of the rule. *Id.* at 28–29. The D.C. Circuit found that, even if the initial "issuance of the [] Rule violated the Appointments Clause . . . [the FDA Commissioner's] ratification cured any Appointments Clause defect." *Id.* at 28. Because the D.C. Circuit Court of Appeals is especially persuasive in the field

11

of administrative law, this Court now follows its lead and finds that a valid ratification in this case would cure any Appointments Clause defects in the Approach Rule, which would resolve Plaintiffs' challenge on the merits.[2]

### C.    The ratification at issue here is valid.

Courts generally consider three factors in considering whether a ratification of agency action is valid: "First, the ratifier must, at the time of ratification, still have the authority to take the action to be ratified.  Second, the ratifier must have full knowledge of the decision to be ratified. Third, the ratifier must make a detached and considered affirmation of the earlier decision." *Adv. Disposal Servs. East, Inc.*, 820 F.3d at 602.  Here, Defendants assert that all three of these requirements are satisfied, and Plaintiffs challenge only the first element. ECF 30-1, at 9; *see also* ECF 33, at 3–22 (making no argument relating to any factor other than the NOAA Administrator's authority).

The second and third requirements are satisfied.  In the ratification itself, Dr. Spinrad stated that he "ha[d] knowledge of the contents, purpose, and requirements of the Approach Rule and its rulemaking record." ECF 28, at 148.  Dr. Spinrad also stated in the ratification that he "careful[ly] review[ed]" the rule and based his ratification off of "[his] knowledge of its provisions, and [his] independent judgment," "without deference to [the] prior decision." *Id.*  Furthermore, this government action is entitled to a presumption of regularity. *Nat'l Archives & Recs. Admin. v.*

---

[2] Plaintiffs insist that, even if the ratification in this case is valid, is does not cure the alleged Appointments Clause defects of the Approach Rule on the merits, but rather only renders the case moot.  *See* ECF 33, at 21 (incorporating ECF 15, at 34–43).  Plaintiffs encourage this Court to disregard *Moose Jooce*, arguing that the D.C. Circuit's decision in that case allows the FDA to continue issuing rules in violation of the Appointments Clause. ECF 15, at 40.  That Plaintiffs are dissatisfied with the outcome and resulting impacts of *Moose Jooce*, however, is not enough to persuade this Court to deviate from clearly persuasive precedent from five circuits, including the D.C. Circuit, a pillar of administrative law. *See supra* (collecting cases); *see also* ECF 15, at 36 (acknowledging that "the lower courts" across the country generally treat ratification as resolving an Appointments Clause challenge on the merits).

*Favish*, 541 U.S. 157, 174 (2004) (citing *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)).  As such, if the first element—Dr. Spinrad's authority to issue the ratification—is satisfied, the ratification will be valid on its face.

Plaintiffs attempt to invalidate the ratification of the Approach Rule by arguing that the NOAA Administrator had no statutory authority to ratify it.  ECF 33, at 4–15.  Apart from the requirements for a valid ratification, Plaintiffs also assert that the ratification is invalid because common law principles of the law of agency bar the ratification and because structural concerns stemming from the potential violation of the Appointments Clause cannot be cured.  *Id.* at 15–21.  These arguments fail, and the ratification is valid.

                1.      <u>The NOAA Administrator had proper authority to ratify the Approach Rule.</u>

Plaintiffs argue that Dr. Spinrad, as the NOAA Administrator, lacked the authority to ratify the Approach Rule because the MPAA neither expressly nor implicitly grants him the power to do so.  ECF 33, at 8–13.  According to Plaintiffs, ratification is, by its nature, retroactive, and "[r]etroactive powers must be expressly granted."  ECF 33, at 4–8.  They reason that there is no express statutory authority for ratification under the MMPA, and as such, the NOAA Administrator lacked the authority to ratify the Approach Rule.  *Id.*

The District Court for the District of Columbia considered an argument similar to Plaintiffs' retroactivity argument in *Alfa International Seafood v. Ross*, 264 F. Supp. 3d 23 (D.D.C. 2017).  In *Alfa International Seafood*, the plaintiff argued that the Secretary of Commerce's ratification of a NOAA rule signed by the DAARP was invalid in part because the ratification was retroactive in nature as it ratified a rule that had already been published.  *Id.* at 44. The Court soundly rejected this argument and found that the Secretary's ratification was valid.  *Id.* at 44–46.  As the Third Circuit has noted, when the principal had the authority to take the underlying action both at the time of the ratification *and* at the time of the act itself, the ratification "'relates back'

in time to the date" that the underlying act was taken—here, the issuance of the Approach Rule. *Advanced Disposal Servs. E., Inc. v. N.L.R.B.*, 820 F.3d 592, 602 (3d Cir. 2016) (*quoting In re E. Supply Co.*, 267 F.2d 776, 778 (3d Cir.1959)).

Applying the *Alfa International Seafood* court's reasoning in this case means that the ratification cures any defect in the Approach Rule not from the date of the ratification onwards, but from the date of the original issuance of the Approach Rule. And because the Approach Rule was never invalidated, there is no impact to Plaintiffs' rights during the "relating back" timeframe because the rule was in place since its issuance, at which time it was presumed valid, and it is in place now, with Dr. Spinrad's ratification relating back to its initial date of promulgation. Thus, the validity of the Approach Rule from the date of its original issuance until today, and Plaintiffs' rights under it, are unaffected by the ratification. *See also* ECF 34, at 8 (arguing in reply brief that the ratification of a rule does not change "the status quo ante" as "an individual or entity could be in violation of the ratified rule from the date of its original issuance. By contrast, a regulation with retroactive effect means that a new rule, or a newly valid rule, applies to prior actions by an individual or entity.").

Furthermore, this Court is satisfied that the NOAA Administrator had the statutory authority to issue such a ratification, even if the MMPA never expressly named ratification as a power of the administrator. The MMPA confers broad regulatory authority. *See, e.g., Katelnikoff v. U.S. Dep't of Interior*, 657 F. Supp. 659, 663 (D. Alaska 1986)) ("Under the [MMPA], the Secretary is given a wide array of powers."). It is well established that agencies derive procedural powers that are not expressly stated from statutes when those statutes convey broad implementing powers. *See Vermont Yankee Nuclear Power Corp. v. Nat. Res. Def. Council, Inc.*, 435 U.S. 519, 524 (1978) ("Even apart from the Administrative Procedure Act this Court has for more than four

14

decades emphasized that the formulation of procedures was basically to be left within the discretion of the agencies to which Congress had confided the responsibility for substantive judgments."). As ratification is a procedure by which an agency can ensure its own rules are properly promulgated, it follows that this power can be derived from a broad grant of authority such as that present in the MMPA. Accordingly, the NOAA Administrator had the statutory authority to ratify the Approach Rule. *See* ECF 28, at 95 (administrative record showing Department Organizational Order delegating "functions prescribed by the" MMPA from Secretary of Commerce to NOAA Administrator).

Finally, Dr. Spinrad, the NOAA Administrator who ratified the Approach Rule, was nominated by President Biden and confirmed by Congress, satisfying any concerns about an alleged improper appointment. ECF 28, at 45 (showing President Biden's nomination of Dr. Spinrad); ECF 28, at 90 (showing Senate's confirmation of Dr. Spinrad). As such, Dr. Spinrad had proper authority to ratify the Approach Rule, and the ratification meets all three requirements for validity.

    2.    <u>Plaintiffs' arguments based on the common law of agency are inapplicable.</u>

Plaintiffs' arguments based in the common law of agency as described in the Restatement Second of Agency also do not invalidate the ratification of the Approach Rule. Plaintiffs argue that "when an executive official attempts to ratify another official's action, courts should apply 'principles of agency law' and '*the* doctrine of ratification,' that is, the pre-existing common law doctrine of ratification, including its limits, such as those embodied in § 90 of the Restatement [Second of Agency]." ECF 15, at 19 (emphasis in original) (citing *Federal Election Comm'n v. NRA Political Victory Fund*, 513 U.S. 88, 98 (1994)). But, like the D.C. District Court, this Court "is unconvinced that the Restatement [Second of Agency] . . . applies to the question at hand."

*Alfa Int'l. Seafood*, 264 F. Supp. 3d at 44. The question before the Court is not one of agency law; "[i]nstead, the question presented is one of administrative law." *Id.*

As Defendants rightly point out, *Federal Election Commission v. NRA Political Victory Fund* ("*NRA Political Victory Fund*") does not stand for the proposition that the Restatement Second of Agency governs all aspects of agency ratification; rather the Court there explained that a narrow question in that case was "at least presumptively governed by principles of agency law" as summarized in the Restatement Second, which was at the time the most updated volume. *Id.* at 98; *see also* ECF 16, at 5 ("Contrary to Plaintiffs' argument, *Federal Election Commission v. NRA Political Victory Fund* ("*NRA*"), 513 U.S. 88 (1994), did not adopt the entire Second Restatement as binding law regarding the ratification of government acts."). And the particular issue the Court was deciding in applying the Second Restatement in *NRA Political Victory Fund* was a fact-specific one not analogous to this case. As the District Court of D.C. explained:

> [I]n *Federal Election Commission v. NRA Political Victory Fund*, the Supreme Court was faced with the question of whether the Solicitor General's "'after-the-fact' authorization" of a petition for certiorari filed by the Federal Election Commission ("FEC") was ineffective because the Solicitor General issued his "ratification" after the time for filing the petition had passed. The Court explained: "Here, the Solicitor General attempted to ratify the FEC's filing on May 26, 1994, but he could not himself have filed a petition for certiorari on that date because the 90-day time period for filing a petition had expired on January 20, 1994. His authorization simply came too late in the day to be effective." In other words, as the Solicitor General lacks the authority to late-file a petition for certiorari, he likewise lacks the authority to ratify a petition late-filed by someone else.

*Alfa Int'l Seafood v. Ross*, 264 F. Supp. 3d 23, 45–46 (D.D.C. 2017) (quoting *N.R.A. Political Victory Fund*, 513 U.S. at 98). The Supreme Court in *N.R.A. Political Victory Fund* held that, under the specific circumstance in which the ratifying officer himself did not have the proper authority to take the action he sought to ratify, principles of agency law would bar the ratification. *N.R.A. Political Victory Fund*, 513 U.S. at 98. Here, though, as established above, Dr. Spinrad *did*

have the authority to issue the Approach Rule at the time of the ratification. As such, the principle of ratification based on agency law applied in *NRA Political Vicotry Fund* does not apply here.

Plaintiffs further argue that "if Rauch's exercise of delegated decision-making authority would violate the Appointments Clause, then no constitutionally valid principal-agent relationship between him and [Dr.] Spinrad could ever exist with respect to that delegated decision-making power." ECF 15, at 23. Thus, Plaintiffs effectively argue that the Approach Rule cannot be ratified because Rauch could never have been a constitutionally lawful agent. This is simply incorrect. "When a statute delegates authority to a federal officer or agency, subdelegation to a subordinate federal officer or agency is presumptively permissible absent affirmative evidence of a contrary congressional intent." *U.S. Telecom Ass'n v. F.C.C.*, 359 F.3d 554, 565 (D.C. Cir. 2004) (citing *United States v. Giordano*, 416 U.S. 505, 512–13 (1974)). Following this principle, in *Alfa International Seafood*, the D.C. District Court found that a statute's delegation of authority to the Secretary of Commerce and the Secretary's chosen designee indicated that either the Secretary or the Secretary's designee "presumptively could sub-delegate her rulemaking power to a subordinate" in the absence of any evidence of congressional intent to the contrary. 264 F. Supp. 3d at 39. Here, Plaintiffs have provided no "affirmative evidence" that Congress did not intend to allow the Secretary to designate their authority. *See* ECF 15, at 23; ECF 33, at 18. As such, there is no reason to believe that Congress did not intend to permit the Secretary to delegate their authority to subordinates and to allow those subordinates to further delegate those powers. The ratification does not fail on this basis, either.

      3.    The ratification is able to cure the potential "structural" defects of the initial publication of the Approach Rule.

Plaintiffs also assert that the Court should not find that the ratification cures any Appointment Clause defects in the Approach Rule because the "[s]tructural errors cannot be

17

cured." ECF 33, at 20–21 (citing ECF 15, at 30–34). They assert that "[w]ithout [] a showing of

harm or harmlessness, it is impossible to show that a putative cure was not tainted by the violation."

ECF 15, at 32. But on this point, Plaintiffs analogize criminal law structures to those of

administrative law, such as saying that a petit jury's conviction was "essentially a ratification" of

an improper indictment. *Id.* at 32–33. This is not, however, a criminal case, and the concerns—

namely, a criminal defendant's liberty interest—that motivate courts to find that structural errors

in the criminal context "infect the entire trial process" even absent a showing of prejudice simply

do not apply here, where the review is conducted under the deferential standard of the

Administrative Procedures Act. *See United States v. Curbelo*, 343 F.3d 273, 281 (4th Cir. 2003)

(explaining the impact of structural errors on criminal trials). Thus, like the D.C. Circuit found in

*Moose Jooce* when confronted with a similar argument, Plaintiffs here "demonstrate no

'continuing prejudice'" against them due to the ratification, and as such, these "structural

concerns" offer no barrier to the validity of the ratification's cure of the alleged procedural defects

in this case. 981 F.3d at 30.

　　　　Finally, Plaintiffs attempt to shoehorn the merits of their Appointments Clause challenge

into their opposition to Defendants' motion for summary judgment. They argue that "the actions

of improperly appointed officials, including Mr. Rauch's signature and publication of the

Approach Rule—even at the direction of [D]r. Spinrad—are 'void.'" ECF 33, at 19. But this is

the whole point of ratification; it cures any Appointments Clause defects that may have been

present in the underlying rule. As such, this argument, too, fails.

　　　　The ratification is valid and cures any alleged defects in the merits of the Approach Rule.

Because the ratification of the Approach Rule was valid, Plaintiffs' first claim fails on its merits,

and summary judgment is granted for Defendants on count one.

**D. Because the ratification relates back in time to the issuance of the Approach Rule and cures any procedural defects in the rule, the documents delegating authority to the DAARP are not reviewable.**

Plaintiffs bring their second claim, a challenge to the "Delegation of Rulemaking Authority to a Person Not Appointed as an Officer" pursuant to the Administrative Procedure Act ("APA"). ECF 1, at 20–21. "A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action." *Id.* A "preliminary, procedural, or intermediate agency action" is one that "does not itself adversely affect [the] complainant but only affects his rights adversely on the contingency of future administrative action." *Am. Airlines, Inc. v. Herman*, 176 F.3d 283, 288 (5th Cir. 1999) (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130 (1939)).

Because Dr. Spinrad's ratification of the Approach Rule relates back to the original date of issuance of the rule and constituted Dr. Spinrad's independent review and validation of the rule, the Approach Rule no longer relies upon the delegation of authority to the DAARP. As such, to the extent that the delegation documents authorizing the DAARP to sign final rules were an intermediate agency action underlying the Approach Rule prior the ratification, they no longer are. As a result, the delegation documents are not reviewable under the APA. Summary judgment is granted in favor of Defendants on count two.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment, ECF 30, is **GRANTED**. A separate implementing Order will issue.

Dated: June 3, 2024                                             /s/
                                                        Brendan A. Hurson
                                                        United States District Judge